THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) No. 15-40720-01 |
| JAMES W. RUSSELL, | ) |
| Defendant. | ) |

## STIPULATION OF FACTS

Comes now Stephen R. Wigginton, United States Attorney for the Southern District of Illinois, through Scott A. Verseman, Assistant U.S. Attorney for this District, and herewith enter into the following Stipulation of Facts with the defendant, James W. Russell, represented by his attorney Melissa A. Day, pertaining to the conduct of the defendant charged in the criminal information and relevant conduct of the defendant within the scope of U.S.S.G. §1B1.3.

1. Defendant was employed by a company that owned and operated rental properties located near colleges and universities, including properties located in Carbondale, Illinois.

2. Defendant left his employment with that company in February 2008.

3. During the course of his employment, defendant became aware that the owner of the company he worked for ("Individual A") had engaged in certain criminal conduct. Specifically, defendant learned that Individual A had enriched himself and his company by conducting a mortgage fraud scheme.

4. Immediately after he left his employment, defendant contacted Individual A and told Individual A that he had possession of certain fraudulent documents relating to the mortgage fraud scheme. Defendant agreed to deliver the fraudulent documents to Individual A on the condition that Individual A make a cash payment to him. Because Individual A was fearful that

1

defendant would expose his mortgage fraud scheme, Individual A agreed to defendant's proposal.

5. On approximately February 22, 2008, defendant met with Individual A at a restaurant near Lambert Field in St. Louis, Missouri. Individual A provided $3,000 in cash to defendant. In return, defendant provided the fraudulent documents to Individual A.

6. After the meeting in St. Louis, defendant returned to his residence in Florida. Shortly after he returned to Florida, defendant contacted Individual A and demanded more money.

7. On February 28, 2008, defendant sent an e-mail, from his residence in Florida, to Individual A in New York. In this e-mail, defendant threatened to inform the victimized lenders of Individual A's mortgage fraud scheme. Defendant also threatened to disclose Individual A's criminal activities to a District Attorney in Illinois. Defendant gave Individual A a deadline of 10:00 a.m. the next morning to respond to his demands.

8. Defendant included an attachment with his February 28, 2008, e-mail to Individual A. This attachment consisted of two unsent e-mails, addressed to the victimized lenders. In these unsent e-mails, defendant invited the lenders to contact him to discuss fraud committed by Individual A. By attaching these unsent e-mails to his February 28th e-mail, defendant intended to cause Individual A to fear that the unsent e-mails would be sent to the lenders and/or law enforcement authorities if Individual A did not meet defendant's demands.

9. After he received the February 28th e-mail, Individual A was again fearful that defendant would expose the mortgage fraud scheme. As a result, Individual A agreed to start providing regular payments to defendant in return for defendant's agreement not to contact the victim lenders and law enforcement authorities.

10. Beginning on March 12, 2008, Individual A began making regular transfers of funds from accounts he controlled in New York to an account defendant opened in Florida. The amounts of the transfers ranged from $500 to $3,000. The transfers were made at least once per week.

11. Beginning on May 7, 2008, defendant also demanded that Individual A pay certain of defendant's living expenses, including providing a boat for defendant to live on, providing a car for defendant to drive, purchasing a motorcycle for defendant to ride, and providing Direct TV to defendant's residence. Individual A gave in to defendant's demands and paid these expenses on behalf of defendant.

12. Individual A transferred the funds to defendant and paid defendant's living expenses because of his fear that, if he did not make these payments, defendant would expose the mortgage fraud to the victim lenders and/or law enforcement authorities. Defendant knew that this fear caused Individual A to make these payments.

13. The total amount of the transfers and living expenses paid by Individual A was approximately $200,000.

14. Defendant's conduct affected interstate commerce. Individual A's company conducted business in several different states. Defendant's extortion reduced the assets of Individual A's company, thereby lessening the amount of interstate business activities conducted by that company.

SO STIPULATED:

                                              STEPHEN R. WIGGINTON
                                              United States Attorney

_____     _____
JAMES W. RUSSELL                              SCOTT A. VERSEMAN
Defendant                                                   Assistant United States Attorney

_____
MELISSA A. DAY
Attorney for Defendant

Date: 2-11-2015                                  Date: February 11, 2015